512

(No. 42610.—

(No. 42611.—

CITY CARTAGE, INC., Appellee, *vs.* ILLINOIS COMMERCE COMMISSION, Appellant.—J & W CARTAGE CO., INC., Appellee, *vs.* SAME, Appellant.

*Opinion filed Oct. 7, 1970.—Rehearing denied Dec. 3, 1970.*

WILLIAM J. SCOTT, Attorney General, of Springfield, (PETER A. FASSEAS and EDWARD G. FINNEGAN, Special Assistants Attorney General, of counsel,) for appellant.

HAROLD E. MARKS, HUGH M. MATCHETT, and JAMES R. MADLER, all of Chicago, for appellee.

Mr. JUSTICE BURT delivered the opinion of the court:

The cases of City Cartage, Inc. v. Illinois Commerce Com. and J & W Cartage Co., Inc. v. Illinois Commerce Com. have been consolidated for this opinion. Both of said cases are on appeal from an order of the circuit court of Cook County reversing and remanding an order of the Illinois Commerce Commission, and they both involve the application of sections 8 and 9, called the "grandfather clauses", of the Illinois Motor Carrier of Property Act. Ill. Rev. Stat. 1967, ch. 95½, pars. 282.8 and 282.9.

On January 1, 1954, the Illinois Motor Carrier of Property Act became effective. (Ill. Rev. Stat. 1953, ch. 95½, pars. 282.1—282.30.) This Act repealed the Illinois Truck Act (Ill. Rev. Stat. 1939, ch. 95½, pars. 240-282), but sections 8 and 9 of the Motor Carrier of Property Act granted carriers holding authority under the Illinois Truck Act the status of "grandfather" carriers. The Illinois Truck Act had a classification called "local carrier" which was defined as any person who undertakes, whether directly or by a lease, or any other agreement, to transport property or any class or classes of property by truck and for compensation for the general public in intrastate commerce. The new Illinois Motor Carrier of Property Act did not contain the "local carrier" classification, but merely contained classifications of "contract carrier of property by motor vehicle" and "common carrier of property by motor vehicle". The term "contract carrier of property by motor vehicle" is defined under the new Act as any person who under individual written bilateral contracts transports property over the highways of this State by a motor vehicle for hire. The term "common carrier of property by motor vehicle" is defined as any person who undertakes to transport property over the highways of this State for the general public by motor vehicle for hire, whether over regular or irregular routes.

In the J & W Cartage Co., Inc. case, said carrier was the holder of a "local carrier" authority issued pursuant to

the provisions of the Illinois Truck Act. J & W Cartage Co., under their "local carrier" permit, had authority to carry general commodities within a 50-mile radius of Chicago, Illinois. J & W Cartage Co. provided transportation services for the general public in intrastate commerce and also indirectly transported the same class of property for compensation in intrastate commerce by lease of trucks with drivers.

Section 8 of the Motor Carrier of Property Act provides that any person who on or prior to the effective date of the Motor Carrier of Property Act leases for hire motor vehicles together with drivers therefor, shall, in addition to being authorized to operate as a common carrier by motor vehicle, be also authorized to continue operating as a contract carrier by motor vehicle in the leasing, for hire, of motor vehicles together with drivers therefor. Ill. Rev. Stat. 1967, ch. 95½, par. 282.8.

Section 9 of the Motor Carrier of Property Act as amended effective July 8, 1955, provides that every carrier of property by motor vehicle who was actually operating on December 31, 1953, pursuant to the provisions of the Illinois Truck Act, who prior to January 1, 1957, filed with the Commission in writing an application for a certificate as a common carrier or a permit as a contract carrier or both, was to be granted a new certificate or permit or both, to perform the operation and service authorized and actually performed pursuant to the provisions of the Illinois Truck Act on December 31, 1953. Section 9(b) further provides that if after a hearing it is shown that the certificate or permit issued by the Commission pursuant to the provisions of section 9(a) does not conform to the operating rights actually exercised by the holder of such certificate or permit issued pursuant to the provisions of the Illinois Truck Act, then the Commission shall promptly modify such certificate or permit so that it shall conform

to the authority in actual use under such Act. Ill. Rev. Stat. 1967, ch. 95½, par. 282.9.

On March 17, 1954, J & W Cartage Co., filed its application with the Commission for a certificate as a common carrier, and on April 5, 1955, a certificate as a common carrier was issued for the identical commodities and territories contained in its local carrier authority under the Illinois Truck Act. On August 17, 1967, J & W Cartage Co. applied for a contract carrier permit under section 8 of the Motor Carrier Act. The petition stated that it had operated and leased motor vehicles, together with drivers, to persons, firms, and corporations as a contract carrier of general commodities since 1939, in addition to acting as a common carrier of general commodities. At the hearing, five shippers testified that J & W Cartage Co., had leased vehicles to them together with drivers for transportation of various commodities to and from points within Illinois. J & W Cartage Co., contends that said five shippers were merely a cross-section of shippers of general commodities which utilized their services of leasing motor vehicles with drivers. The Commission's order of July, 1968, found that J & W Cartage Co. should be granted a permit as a contract carrier in addition to its certificate of public convenience and necessity as a common carrier. Said permit authorized transportation service as a contract carrier in intrastate commerce limited to the leasing of motor vehicles together with drivers therefor, pursuant to written bilateral contract, filed or to be filed with the Illinois Commerce Commission concerning the transportation for five specified classes of commodities, for shippers who testified at the hearing.

J & W Cartage Co. filed an application for a rehearing, which was denied September 4, 1968, wherein it maintained that the Commission was required under section 8 of the Motor Carrier of Property Act to issue it authority to lease motor vehicles with drivers for the same commodities and

territories as it was authorized as a common carrier, and unrestricted as to type or classes of shippers it could serve. On appeal, the circuit court of Cook County reversed the Commission's order, finding that the Commission had failed to give proper recognition to the "grandfather rights" of J & W Cartage Co. as provided for in section 8 of the Illinois Motor Carrier of Property Act, and it further ordered that the Commission modify its order by authorizing J & W Cartage Co. to engage in, as a common carrier, the leasing of motor vehicles together with drivers therefor pursuant to bilateral contracts, filed or to be filed with the Illinois Commerce Commission, concerning the transportation of general commodities; all within a 50-mile radius of 1922 South Archer Avenue, Chicago, Illinois, and to provide such service to or from any point outside such authorized area of operation for a shipper or shippers within such area. Said order restricted the transportation of commodities in bulk as had been agreed to at the hearing, and ordered that the cause be remanded to the Commission for the entry by the Commission of an amended order pursuant to the terms of the circuit court order. The Commission's petition for reconsideration was denied June 13, 1969, and notice of appeal to this court was filed August 6, 1969.

The issue in the J & W Cartage Co. case is whether or not the Commission is to apply the provisions of section 9, requiring the contract permit to be limited to actual performance on December 31, 1953, and permitting the Commission to modify the permit to conform to actual use, or whether the Commission is to issue a contract carrier permit solely under section 8 wherein no provision is contained limiting the "grandfather permit" to the actual classes of shippers and commodities of the leasing operation as of December 31, 1953. The Commission argues that the relief sought by J & W Cartage Co. could only be granted under section 9 of the Motor Carrier of Property Act which authorizes the Commission, pursuant to paragraph

(b) after hearing, to correct a certificate or permit issued under the "grandfather clause", and, therefore, the Commission was required to make specific findings of fact concerning the authority of J & W Cartage Co. under the Illinois Truck Act, and to limit the permit to shippers it was serving and the commodities it was actually transporting on December 31, 1953.

J & W Cartage Co. was issued its "grandfather" certificate as a common carrier under section 9 (a). The provision in section 8(a) which states that one who holds a certificate as a common carrier may also obtain a permit as a contract carrier when he leases for hire motor vehicles together with drivers therefor appears to be a clarification of the type of permit (contract carrier) that one needs who previously was leasing for hire motor vehicles together with drivers. It appears that the legislature intended sections 8 and 9 to be construed together to permit the Commission to restrict and correct dual operation permits and certificates.

It appears to have been the legislative intent to explain that one who leased for hire motor vehicles together with drivers could continue to operate as a contract carrier even though he was also operating as a common carrier and that the dual authority mentioned in section 8(a) is subject to the limitations of section 9. This was the interpretation of the Illinois Commerce Commission, and great weight should be given to the decision of the tribunal which is appointed by law and informed by experience. However, because J & W Cartage Co. was not aware of the necessity of showing proof of all shippers and commodities in the leasing of trucks with drivers as of the effective date of the Act, we are going to remand this case to the Illinois Commerce Commission with directions to conduct a further hearing for the purpose of allowing J & W Cartage Co. to show actual performance of all lease operations as of December 31, 1953.

In the case of City Cartage, Inc. v. Illinois Commerce

Commission, we are asked to construe an amendment to section 9 of the Motor Carrier of Property Act. Section 9 of the Motor Carrier of Property Act, which became effective January 1, 1954, provided that a carrier of property by motor vehicle, operating under one or more of the authorities under the Illinois Truck Act, had 120 days from the effective date of the Act to file with the Commission in writing an application for a certificate or a permit or both a certificate and a permit authorizing such carrier to perform the operation and service authorized pursuant to the provisions of the Illinois Truck Act. Said section 9 of the Motor Carrier of Property Act was amended, effective July 8, 1955, whereby a carrier who filed on or before January 1, 1957, was to be issued a new certificate or permit authorizing such carrier to perform the operation and service authorized and actually performed pursuant to the provisions of the Illinois Truck Act on December 31, 1953.

The issue in the City Cartage case is whether or not the 1955 amendment to section 9(a) of the Motor Carrier of Property Act (Ill. Rev. Stat. 1967, ch. 95½, par. 282.9(a)) limits the operation and service to that authorized and actually performed on December 31, 1953, in a case where the carrier applied for authority as both a common and a contract carrier pursuant to section 9 within the first 120 days and prior to the 1955 amendment. In this case, City Cartage, Inc. was a local carrier and a contract carrier under the Illinois Truck Act, and its permit as a contract carrier authorized it to transport commodities as shown in bilateral contracts or evidence thereof, on file, in the territory as designated in said contract or contracts. On March 9, 1954, City Cartage, Inc. made application under section 9 of the "grandfather clause" for authority as both a common and a contract carrier. On January 19, 1955, the Commission issued its "grandfather" order granting to City Cartage, Inc. a permit as a contract carrier by motor vehicle and also as a common carrier. Said permit as a contract carrier was

limited to commodities and territories as shown in bilateral continuing written contracts, copies of which were to be on file with the Illinois Commerce Commission in the territory or on the route between the points as designated in said contract or contracts.

On April 3, 1967, section 15.3 of the Motor Carrier of Property Act was amended (Ill. Rev. Stat. 1967, ch. 95½, par. 282.15—3), requiring contract carriers operating within a county having a population of more than 1,000,000 inhabitants to file schedules of rates and charges. The Commission refused to accept the contracts of City Cartage, Inc. which it had with nonrailroad shippers because the order issuing City Cartage, Inc. the grandfather contract carrier authority had restricted its contract carrier services to certain named railroads with which City Cartage, Inc. had entered into contracts at that time.

City Cartage, Inc. filed a petition on February 13, 1968, requesting the Commission to delete the restriction to service for named railroads. Section 6 of the Illinois Motor Carrier of Property Act was cited wherein it is provided that no terms or conditions, or limitations shall restrict the right of the contract carrier of property to substitute or add contracts within the scope of the permit or add to his or its equipment and facilities within the scope of the permit. Part of the original order of January 19, 1955, granting the contract carrier permit to City Cartage, Inc., stated that applicant is not authorized to render transportation service by virtue of new contracts with the parties not named in the order or said permit, regardless of whether the hauling is within the territorial scope or commodity description of the traffic named in the order or said permit, unless authorized to do so by the Illinois Commerce Commission after application, notice, and hearing as provided by law. Thus, there was a conflict between the wording of City Cartage, Inc.'s order granting the permit as a contract carrier, and section 6 of the Motor Carrier of Property Act because section 6

said that no terms should restrict the right to substitute contracts within the scope of the permit, and City Cartage, Inc.'s order stated that the applicant was not authorized to render service by virtue of new contracts with parties not named in the order, regardless of whether the haulage was within the territorial scope and commodity description of the order.

The Commission, after notice and hearing on the matter before a hearing examiner, issued an order deleting the complained of restriction and substituting a paragraph stating applicant may add or substitute contracts within the scope of the permit therein authorized. Thus, the scope of the permit came into issue. Said order of the Commission provided for a new permit limited to commodities and territories as follows: "Commodities set forth in and pursuant to bilateral written contracts, filed or to be filed with the Illinois Commerce Commission, concerning the transportation, FOR a railroad, OF general commodities between the railroad freight depots of shippers in Chicago, Illinois, and points within the Chicago District, as provided in railroad tariffs."

City Cartage, Inc. filed a petition for rehearing with the Commission asserting that the Commission had retained the restriction against adding or substituting contracts by cancelling its "grandfather" permit and issuing a new permit, the provisions of which were prohibited by section 6 of the Motor Carrier of Property Act. Said petition for rehearing was denied July 24, 1968, and notice of appeal was filed in the circuit court of Cook County August 16, 1968. The circuit court reversed the Commission's order finding that the Commission had failed to give proper recognition to the rights of City Cartage, Inc., as provided for in section 6. The circuit court further ordered that the Commission modify its order by authorizing City Cartage, Inc. to engage as a contract carrier and to transport general commodities for general shippers in the territories set forth in

contracts filed or to be filed with the Commission. The cause was remanded to the Illinois Commerce Commission for the entry of an amended order pursuant to the terms of the order of the circuit court. The Commission's petition for reconsideration was denied June 13, 1969, and notice of appeal was filed August 6, 1969.

City Cartage, Inc.'s contract carrier permit was issued pursuant to section 9 of the Motor Carrier of Property Act. (Ill. Rev. Stat. 1967, ch. 95½, par. 282.9.) Under section 9, as it is now written, the newly issued "grandfather" permit must be limited to the commodities authorized under the Truck Act and *actually* being transported on December 31, 1953. (*Farm to Market Truckers Ass'n, Inc.* v. *Perrine* (1961), 31 Ill. App. 2d 387.) City Cartage, Inc. contends that since it received its "grandfather" carrier permit prior to the July 8, 1955, amendment to section 9 of the Motor Carrier of Property Act (which amendment required proof of actual operations), City Cartage, Inc.'s permit was not limited to the actual operation as of December 31, 1953. City Cartage, Inc. points out that it filed its application with the Commission on March 29, 1954, and, thus, was within the 120-day cutoff period of the original section 9 before the amendment requiring proof of actual operations. However, this argument was not made in the petition for rehearing filed with the Commission or advanced in the circuit court, and, therefore, cannot be considered for the first time by this court. Section 67 of the Public Utilities Act (Ill. Rev. Stat. 1967, ch. 111⅔, par. 71) made applicable to the Motor Carrier of Property Act by section 25 of the latter Act (Ill. Rev. Stat. 1967, ch. 95½, par. 282.25) provides that no persons or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for rehearing before the Commission. Therefore, said argument cannot be considered by this court at this time. However, it appears that the legislature did not intend to bestow any vested rights upon those shippers who ob-

tained their "grandfather" permits or certificates within the first 120 days, and said "grandfather" clauses should be considered as they now exist.

From a review of the record, it appears that the Commission's determination as to the scope of City Cartage, Inc.'s contract carrier operation as of December 31, 1953, is properly set forth in the limitations of the new permit.

The order of the circuit court of Cook County in the case of J & W Cartage Co., Inc. v. Illinois Commerce Commission is reversed, and this cause is remanded to the Illinois Commerce Commission with directions to conduct a further hearing for the purpose of allowing J & W Cartage Co. to show any proof it might have of all shippers and commodities actually performing in the leasing of trucks with drivers as of December 31, 1953. The order of the circuit court of Cook County in the case of City Cartage, Inc. v. Illinois Commerce Commission is reversed, and the order of the Illinois Commerce Commission in said case is sustained.

*No. 42610.—Circuit court reversed,*
*order of Commission sustained.*
*No. 42611.—Reversed and remanded.*